**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GAVIN CULLENS,

                Petitioner,

v.                                Case Number: 2:13-CV-11835

CINDI CURTIN,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Gavin Cullens is a state inmate currently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan, pursuant to convictions for felonious assault, assault with intent to cause great bodily harm, felon in possession of a firearm, and possession of a firearm during the commission of a felony. He has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising ten grounds for habeas corpus relief. Respondent has filed an answer in opposition arguing that some of the claims are unexhausted, three are procedurally defaulted, and all are without merit. The court denies the petition.

## I. BACKGROUND

Petitioner's convictions arise from a shooting in Detroit on April 14, 2008, resulting in the death of Raphael Brooks and serious injury to Anthony Baker. The prosecution's theory of the case was that Petitioner armed with a handgun, entered a home in Detroit with the intent to rob Brooks and Baker, who were selling drugs from the home. The defense argued that Petitioner, instead, was merely at the wrong place at

the wrong time and was caught in crossfire between Brooks and another, unidentified shooter.

Anthony Baker testified that, on April 14, 2008, he was at 8747 Elmira Street in Detroit with Raphael Brooks.  They were selling marijuana and cocaine.  Brooks was seated on the couch with a semiautomatic handgun under a blanket.  Baker heard someone knock at the front door.  He saw Petitioner standing outside.  He opened the two locked front doors, and let Petitioner into the apartment.  Baker testified that, as he was locking the storm door, a security door with bars and glass, Petitioner put a gun to his head and told him not to move.  Brooks then started shooting at Petitioner, and Petitioner shot Baker in the shoulder. Petitioner fell to the ground as a result of being shot multiple times by Brooks, and called out for help.  A man started running toward the apartment shooting into the apartment.  Baker ran into the back room and hid until he thought Petitioner and the other shooter were gone.  When he entered the living room he saw that Brooks had been shot in the eye.  Baker was then taken to the hospital by ambulance and faced a lengthy recovery from multiple gunshot wounds.

Petitioner testified in his own defense.  He testified that he went to a home on Elmira Street in Detroit to buy some "cush" (a high quality form of marijuana) from a man known to him as "Bad Ass" (Raphael Brooks).  When Petitioner arrived at the home, Anthony Baker opened the door.  Petitioner entered the house and Baker locked the armor guard storm door behind him.  Brooks was seated on the couch.  After Petitioner gave Baker his money, Baker retrieved the "cush" from a back room.  Petitioner and Baker argued over the quality of the marijuana.  Petitioner demanded his money be returned to him.  Petitioner testified that a man carrying a machine gun then

2

approached the front door and was struggling to open the screen door.  According to

Petitioner, the man hollered at Petitioner, saying he heard Petitioner stating that he

would not leave the house.  Baker tried to open the door, but Petitioner stopped him

from doing so.  Baker pulled out a gun, which Petitioner was able to wrest from him.

The man with the machine gun then fired into the house, hitting Petitioner in his side.

Petitioner returned fire.  Petitioner testified that Brooks also pulled a gun and began

firing.  Petitioner was struck by two bullets from Brooks' gun, causing Petitioner to fire in

Brooks' direction.  He admits he may have shot Baker when he was shooting at Brooks.

After the outside shooter stopped shooting, Petitioner also stopped shooting.  He

realized he was badly hurt and dragged himself outside to his car which was parked

nearby.  A man who Petitioner testified he did not know asked Petitioner if he needed

help.  The man then drove Petitioner to the hospital in Petitioner's car.

     The jury found Petitioner guilty of felonious assault, assault with intent to cause

great bodily harm, felon in possession, and felony firearm, but was unable to reach a

verdict on the murder charge or the carrying a concealed weapon (CCW) charge.  At a

subsequent trial, Petitioner was acquitted of the murder charge and the prosecutor

dismissed the CCW charge.

     Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised

these claims through counsel and in a pro per supplemental brief: (i) the prosecutor

failed to correct perjured testimony and defense counsel was ineffective for failing to

impeach the victim's trial testimony; (ii) he was denied right to public trial and defense

counsel was ineffective for failing to object; (iii) his prearrest silence impermissibly used

as evidence of guilt and defense counsel was ineffective for failing to object; (iv)

3

defense counsel was ineffective for failing to move to suppress Petitioner's statement to police; and (v) the prosecutor failed to correct multiple instances of false testimony during the preliminary examination. Petitioner sought to raise six additional claims in a second pro per brief, but the Michigan Court of Appeals denied Petitioner permission to file a second pro per brief. *See* 9/15/2011 Order, ECF No. 42-18, Pg. ID 2500. The Michigan Court of Appeals affirmed Petitioner's convictions. *Cullens*, 2012 WL 3020385.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised these claims: (i) prosecutor failed to correct perjured trial testimony and defense counsel was ineffective in failing to object; (ii) closing of courtroom during jury selection violated Petitioner's right to public trial and counsel was ineffective for failing to object; (iii) prearrest silence improperly used as substantive evidence of guilt and counsel ineffective for failing to object; (iv) counsel was ineffective for failing to move to suppress Petitioner' statement; (v) self-defense instruction improperly given and counsel was ineffective for failing to object; and (vi) trial court erred in failing to present a requested defense to a specific juror and counsel was ineffective for failing to object. The Michigan Supreme Court denied leave to appeal. *People v. Cullens*, 493 Mich. 919 (Mich. 2012).

Petitioner then filed the pending habeas petition. He raises these claims:

I.    Due process rights were violated when trial court failed to present a requested defense to a specific juror; alternatively trial counsel was ineffective in failing to object.

II.    Trial court erred when it gave out self-defense instructions for complainants who were not accused of any crimes to warrant a defense; alternatively trial counsel was ineffective in failing to object.

4

III.   The trial court erred when it failed to give out two self-defense instructions which the evidence required; alternatively trial counsel was ineffective in failing to request and investigate these defenses.

IV.   The prosecution violated his constitutional duty when he failed to correct multiple false preliminary examination and possibly trial testimonies under oath that were material to the case, which violated Cullens's due process rights to a fair trial; alternatively trial counsel was ineffective in failing to impeach the complainant with the whole preliminary examination testimony.

V.   It was prosecutorial misconduct to insinuate facts not supported by the evidence, which violated Cullens's due process rights; alternatively trial counsel was ineffective in failing to object.

VI.   The cumulative effect of multiple errors at trial violated Cullens's due process rights to a fair trial; alternatively trial counsel was ineffective in failing to correct each error.

VII.   The prosecutor improperly used Cullen's pre-arrest silence as substantive evidence of guilty by introducing evidence that Cullen refused to speak to a police officer following admission to the hospital; furthermore, defense counsel was constitutionally ineffective in failing to object.

VIII.   The prosecutor violated his constitutional duty when he failed to correct multiple false preliminary examination testimonies under oath that were material to the case.

IX.   Due process requires a new trial where the prosecutor failed to correct perjured testimony by the complainant which contradicted testimony at the preliminary examination; alternatively, defense trial counsel was constitutionally ineffective in failing to impeach the complainant's trial testimony.

X.   The trial court violated Cullens's right to a public trial by closing the courtroom during jury selection; alternatively, defense trial counsel was constitutionally ineffective in failing to object.

## II. STANDARD

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

5

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562

6

U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that

was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

### A. Exhaustion

Respondent argues that several of Petitioner's claims are unexhausted.

Nevertheless, the court will address the merits of these claims because the court may

decide an unexhausted claim where the unexhausted claim is plainly meritless, not

cognizable on federal habeas review, or doing so is in the best interests of the parties

and judicial economy. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).

### B. Alternate Juror (Claim I)

Petitioner argues in his first claim that his right to due process was violated when

the trial court failed to provide an alternate juror with the answer to a jury question that

had been asked and answered before the alternate juror replaced an ill juror.

Most federal courts that have addressed the issue have held that the

"substitution of an alternate juror in place of a regular juror after deliberations have

begun does not violate the Constitution, so long as the judge instructs the reconstituted

jury to begin its deliberations anew and the defendant is not prejudiced by the

substitution." *Claudio v. Snyder*, 68 F.3d 1573, 1575-76 (3d Cir. 1995) (collecting

cases). Michigan Court Rule 6.411 requires that, when an alternate juror replaces a

seated juror after deliberations commenced, the court must instruct the jury to "begin its

deliberations anew." M.C.R. 6.411. Likewise, under the Federal Rules of Criminal

Procedure, an alternate juror may be ordered to replace a juror after deliberations have

begun, so long as the jury is instructed to begin its deliberations anew. Fed. R. Crim. P.

24(c)(3).

Here, in accordance with Michigan and federal court rules, the trial court instructed the jury to begin their deliberations anew.  Instructing the alternate juror and the reconstituted jury in response to a question asked by the original jury, would violate the requirement that "deliberations begin anew."  Habeas relief is denied on this claim.

### C.  Jury Instruction Claims (Claims II and III)

Petitioner's second and third claims for habeas corpus relief concern jury instructions--specifically, self-defense jury instructions.  Petitioner claims that the trial court erred in instructing the jury that everyone has a right to self-defense, including the shooting victims.  He also argues that the trial court erred in failing to give two specific self-defense instructions relating to his claim that he was not the first person to pull a gun.

The burden of establishing that a jury instruction error warrants habeas relief is a heavy one.  To show that a jury instruction violates due process, a habeas petitioner must demonstrate "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (citations omitted).  A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law; instead, the relevant inquiry is  "whether the ailing instruction so infected the entire trial that the resulting conviction violates due process."  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  The jury instruction "must be considered in the context of the instructions as a whole and the trial record."  *Estelle*, 502 U.S. at 72.

9

Petitioner argues that the trial court erred in instructing the jury, in the context of Brooks' actions, that if a person acts in lawful self-defense of himself or another his actions are justified.  It was undisputed at trial that Brooks shot Petitioner several times. The prosecution argued that Brooks only did so after Petitioner pulled a gun and aimed it at Baker in a robbery attempt.  The defense argued that Brooks was the initial aggressor.  The trial court instructed the jury that the jury needed to determine whether Brooks acted as the initial aggressor or, as was his right under Michigan law, acted in defense of himself and Baker.  This instruction regarding Brooks' right to defend himself and Baker reflects Mich. Crim. JI 7.21, Defense of Others-Deadly Force.  Petitioner, therefore, has not shown it was inappropriate under Michigan law or the facts of this case.

Petitioner also argues that he was denied a fair trial by the trial court's failure to give two self-defense related instructions.  The burden of proving that omission of a jury instruction violated due process is even heavier than that imposed on an incorrect instruction claim.  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

First, Petitioner argues that the jury should have been instructed on the rights of a nondeadly aggressor assaulted with deadly force.  *See* Mich. CJI 2d 7.19.  Under Michigan law, this standard instruction is appropriate where a defendant "assaults someone with fists or a weapon that is not deadly."  *See id.; People v. Terrell*, 106 Mich. App. 319, 322 (Mich. Ct. App. Apr. 30, 1981).  Here, Petitioner's testimony did not support a theory that he was a nondeadly aggressor.  He claims that he disputed the

10

quality of the marijuana he was given and asked that his money be returned to him, but did not claim that he was an aggressor against either Baker or Brooks.  Because the testimony elicited at trial did not support this instruction, Petitioner's due process rights were not implicated by its admission.

Second, Petitioner argues that the trial court erred in failing instruct the jury on self-defense against persons acting in concert.  CJI 2d 7.24.  The self-defense instructions actually given were comprehensive, conveyed all of the elements of self-defense under Michigan law, and properly placed the burden of proof on the prosecutor to show that Petitioner did not act in self-defense.  The lengthy instructions, as given, were adequate to support petitioner's claim of self-defense.  *See People v. Curry*, 175 Mich. App. 33, 41 (Mich. Ct. App. 1989) (holding that a general jury instruction on self-defense adequately informed the jury of the law regarding self-defense against persons acting in concert).  Habeas relief is denied.

### D.  Prosecutorial Misconduct Claims (Claims IV, V, VIII, and IX)

Petitioner next seeks habeas corpus relief based on alleged prosecutorial misconduct.  He argues that the prosecutor engaged in misconduct by: (i) failing to correct false preliminary examination and trial testimony; and (ii) insinuating facts not in evidence when he argued that the person who drove Petitioner to the hospital, Arthur Washington, in fact, acted in concert with Petitioner to rob Baker and Brooks.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will

11

be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Where a state court denies a prosecutorial misconduct claim, the court must ask whether the decision "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 132 S. Ct. at 2155 (quoting *Harrington*, 562 U.S. at 103).

First, Petitioner argues that the trial court knowingly allowed perjured testimony from Anthony Baker.  A false-testimony claim falls under the *Brady* disclosure doctrine, which requires the government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The "contours of [a false-testimony] claim were predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. 264, 269-72, and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)."  *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

The Sixth Circuit has developed a three-part test for determining if the prosecution has committed a *Brady–Napue–Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.  The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Id.* at 894-95 (quoting *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)).

12

In support of his claim, Petitioner points to inconsistencies between Baker's trial testimony regarding the nature, origin, and timing of his gunshot wounds and his testimony on this subject at the preliminary examination. The Michigan Court of Appeals rejected this claim, finding "[t]he mere inconsistencies in Baker's testimony, standing alone, do not establish that his trial testimony was perjured, let alone that the prosecutor knowingly used perjured testimony." *Cullens*, 2012 WL 3020385 at *2. A prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty. The Michigan Court of Appeals' decision denying this claim was not an unreasonable application of Supreme Court precedent.

Petitioner also argues that Baker testified inconsistently regarding the location of the marijuana that he and Brooks kept for sale. No marijuana was found in the house after the shooting. Petitioner argues that Baker testified at the preliminary examination that the marijuana was hidden in the house but then testified at trial that someone had taken all the marijuana from the house prior to the shooting. As with Baker's testimony regarding his gunshot wounds, the inconsistencies in his testimony regarding the location of marijuana do not establish perjury or that the prosecutor knowingly presented false testimony. Petitioner has failed to show the prosecutor committed misconduct.

Finally, Petitioner argues that the prosecutor committed misconduct in arguing that Petitioner knew and acted in concert with the gunman who was shooting into the drug house and that the gunman may have been Arthur Washington, the purported good Samaritan who drove Petitioner to the hospital. Petitioner testified that, when he was inside the drug house, shots were fired from outside the home by an unknown

13

person.  Baker testified gunshots were fired from outside the house only after Petitioner yelled "help."  "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."  *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).  The prosecutor's argument did just that.  The prosecutor raised the possibility that the testimony supported an inference that Petitioner and the outside shooter acted together.  This argument was reasonable considering Baker's trial testimony that the shooting began after Petitioner called for help.  Petitioner has not shown that the prosecutor engaged in misconduct.

### E.  Pre-Arrest Silence (Claim VII)

In his seventh habeas claim, Petitioner argues that evidence of his pre-arrest silence was improperly used against him at trial.  The Michigan Court of Appeals found that no clearly established law held that a defendant's Fifth Amendment right against compelled self-incrimination is violated by admission of a defendant's pre-arrest, pre-*Miranda* silence and, accordingly, denied the claim.  *Cullens*, 2012 WL 3020385 at *3.

The Michigan Court of Appeals correctly held there is no clearly established Supreme Court precedent establishing a constitutional bar to using a defendant's pre-arrest, pre-*Miranda* silence.  *See Bond v. McQuiggan*, 506 F. App'x 493, 498 (6th Cir. 2012) (recognizing that the Supreme Court has expressly declined to consider whether prearrest silence may be protected under the Fifth Amendment).  Because there is no clearly established Supreme Court precedent requiring the suppression of pre-arrest silence, the court finds that habeas relief may not be granted on this claim.  *Accord Jones v. Trombley*, 307 F. App'x 931, 932-33 (6th Cir. 2009).

14

### F.  Right to a Public Trial (Claim X)

Petitioner claims that his right to a public trial was violated by the exclusion of the public from the courtroom during jury *voir dire*.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  The right is applicable to the states through the Fourteenth Amendment.  *Duncan v. Louisiana*, 391 U.S. 145, 148-49 (1968).  "The central aim of a criminal proceeding must be to try the accused fairly."  *Waller v. Georgia*, 467 U.S. 39, 46 (1984).  The public-trial guarantee was created to further that aim.  *Id.* (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)).  A public trial helps to ensure that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury.  *Id.*  The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis.  *Id.* at 49-50, n.9.

The Michigan Court of Appeals denied Petitioner's claim that his right to a public trial was violated.  The state court held that Petitioner failed to preserve this claim because there was no objection to any closure at trial, and that, even if the issue had been preserved, it was meritless because there "is no indication in the record that the courtroom was ever closed."  *Cullens*, 2012 WL 3020385 at *3.  The state court's factual finding that the courtroom was not closed during juror *voir dire* is entitled to deference, 28 U.S.C. § 2254(e)(1), and may be rebutted only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

This court's review of the trial transcript provides no indication that the courtroom was either partially or completely closed to the public during jury *voir dire*.  In fact, the

15

transcript supports a finding that the courtroom was not closed as the judge references the presence of potential trial witnesses in the courtroom. *See* Tr., 1/5/09, ECF No. 47-6, Pg. ID 110.  Petitioner acknowledges that his defense attorney had no recollection that the courtroom was closed to the public.  In support of his claim that the courtroom was closed, Petitioner provides three affidavits, his own, and those of his parents.  Petitioner's affidavit states that no one was allowed inside the courtroom except for prospective jurors.  ECF No. 23, Pg. ID 438.  It is unclear from this affidavit whether Petitioner reached this conclusion based solely on his observation that neither his family members nor any other members of the public were in the courtroom.  He does not explain how he determined that no members of the general public were present nor allege that anyone other than his parents was refused admittance.  Petitioner's parents' affidavits, both of which were signed and dated well after Petitioner's trial, state that a bailiff at the courtroom's entrance told them that they could not enter the courtroom during jury selection.  ECF No. 23, Pg. ID 439, 440.  These affidavits, by themselves, considered along with the trial court's statement that witnesses were in the courtroom, do not present the clear and convincing evidence necessary to rebut the state court's finding that the courtroom was not closed during *voir dire*.  Habeas relief is denied on this claim.

### G.  Ineffective Assistance of Counsel Claims

Petitioner argues that habeas relief should be granted because he received ineffective assistance of trial counsel.  Specifically, Petitioner argues that trial counsel was ineffective for failing to: (i) object when the court failed to provide an alternate juror with the answer to a jury question that preceded the alternate juror's service; (ii) object

16

to the self-defense instructions; (iii) object to numerous instances of prosecutorial misconduct; (iv) object to reference to Petitioner's pre-arrest silence; (v) impeach Baker with inconsistent preliminary examination testimony; and (vi) object to the courtroom closure during *voir dire*.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

17

First, the trial court acted in accordance with state and federal law when the court instructed the jury to begin its deliberations anew upon the seating of an alternate juror. *See* Mich. Ct. R. 6.411 & Fed. R. Crim. P. 24(c)(3). Thus, counsel was not ineffective in failing to object to the failure to provide the alternate juror with an instruction provided in response to the original jury's question.

Second, as discussed above, Petitioner has not shown that the self-defense instructions given were improper or that those omitted were necessary or that their omission violated Petitioner's right to due process. Nor has Petitioner shown a reasonable probability that the result of the proceeding would have been different had counsel objected to the instructions. This claim is meritless.

Next, Petitioner argues that counsel was ineffective in failing to object to the prosecutor's misconduct. But as also discussed above, Petitioner has failed to show that the prosecutor engaged in misconduct. Therefore, counsel was not ineffective for failing to object on this basis. Similarly, counsel was not ineffective for failing to object to testimony regarding his prearrest silence because the testimony was properly admitted under state law and there is no clearly established federal law holding such testimony improper.

Fifth, Petitioner argus that his attorney was ineffective for failing to impeach Baker with his preliminary examination testimony. The Michigan Court of Appeals denied this claim, stating in relevant part:

> The principal issue for the jury to resolve at trial was the credibility of the conflicting accounts of how the episode unfolded, i.e., whether defendant initiated the shooting by producing a gun and threatening Baker and Brooks (as Baker claimed), or whether the shooting was initiated by Baker's production of a gun after another armed man approached the door

18

from the outside (as defendant claimed).  According to both versions, however, gunshots were fired in the direction of defendant and Baker from both Brooks and the man outside the apartment.  Further, Baker never clearly indicated at trial who was responsible for his lower body wounds. Therefore, defense counsel may have decided that it was not necessary to further cross-examine Baker on that subject, particularly where evidence regarding the origin of his lower body wounds would not necessarily have been probative of which version of events was more credible.  Defendant has not overcome the presumption that counsel's actions in this regard were based on sound trial strategy.

Furthermore, defendant has not established a reasonable probability that further cross-examination of Baker concerning the origin of his wounds would have changed the result in this case. ... Baker's allegedly inconsistent preliminary examination testimony related only to the origin of his several lower body wounds.  That testimony would not have impeached Baker's trial testimony that defendant was responsible for the original gunshot wound to Baker's shoulder. Moreover, the jury's verdict convicting defendant of the lesser offense of assault with intent to do great bodily harm, and rejecting the original higher charge of assault with intent to commit murder, reflects an unwillingness to hold defendant responsible for the multiple gunshot wounds sustained by Baker.  Therefore, defendant has not established that he was prejudiced by defense counsel's failure to impeach Baker with the inconsistencies in his preliminary examination testimony.

*Cullens*, 2012 WL 3020385 at *2-3.

The Michigan Court of Appeals reasonably applied *Strickland* in denying this claim.  As the state court noted, defense counsel reasonably could have determined that, because the location of Baker's wounds would not necessarily have substantiated Petitioner's version of events, impeachment on this topic would not have benefitted the defense.  Moreover, the state court reasonably concluded that Petitioner failed to show prejudice because Petitioner was acquitted of assault with intent to murder Baker.

Finally, Petitioner claims that counsel was ineffective in failing to object to the courtroom closure during *voir dire*. Because Petitioner failed to establish that the courtroom was closed during *voir dire*, his attorney was not ineffective in failing to

19

object.

## H.  Cumulative Effect of Claimed Errors (Claim VI)

Petitioner alleges that he is entitled to habeas relief because the cumulative effect of the alleged errors deprived him of a fair trial and due process of law.  On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005)).  Therefore, Petitioner is not entitled to relief on this claim.

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the court will deny a certificate of appealability.

## V.  CONCLUSION

For the reasons set forth above, the court finds that Petitioner is not entitled to

20

habeas corpus relief.  Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus and a certificate of

appealability are DENIED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 29, 2016, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522